IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL CORRAL

     v.

MONTGOMERY COUNTY, et al.

:

:

:   Civil Action No. DKC 13-0444

:

:

**MEMORANDUM OPINION**

Presently pending and ready for review in this First Amendment case are the motions to dismiss or, in the alternative, for summary judgment filed by Defendants Montgomery County, Isiah Leggett, D.M. Smith, and Norman W. Brissett. (ECF Nos. 15 and 17). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions will be granted in part and denied in part.

**I. Factual Background**

Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

On March 23, 2012, Plaintiff Michael Corral and his friend Debra Mehaffey were preaching their religious beliefs on the sidewalk on the southwest corner of Fenton Street and Ellsworth Drive in Silver Spring, Maryland. (ECF No. 9, Verified Amended

Compl. ¶¶ 51-53). That corner is within the commercial development known as "Downtown Silver Spring." The sidewalk is in front of a large movie theater and is heavily trafficked by pedestrians. (*See* ECF Nos. 5-6 to 5-9, photographs of the southwest corner of Fenton Street and Ellsworth Drive). In addition to preaching, Plaintiff and Ms. Mehaffey also erected a small cross attached to a piece of luggage and handed out literature.

Downtown Silver Spring was borne out of a development agreement between the County and a group of private developers. As part of the agreement, the County leased public space, including Ellsworth Drive and its sidewalks, to these developers via an entity known as PFA-B, LLC (hereinafter "PFA"). When the deed was recorded, the County reserved easements for public use for a portion of the leased land, including Ellsworth Drive. The lease reserved to the County an easement for the portion of Ellsworth Drive at issue. This easement defined the area as "Public Use Space," which the County Code provides is "'[s]pace required by the sector plan and other space devoted to such uses as space for public enjoyment.'" (ECF No. 5-4, at 2 (*quoting* Section 59-A-2.1 of the Zoning Ordinance of Montgomery County)). The County retained an easement and right of passage and use for pedestrian and vehicular ingress and egress on, over and across the public use spaces. PFA could impose and enforce such

reasonable rules and regulations as it deemed necessary to maintain order and to promote the safety, security and economic success of Downtown Silver Spring. (*Id.*).

The status of Downtown Silver Spring as public or private property for purposes of the First Amendment arose earlier. In June 2007, it came to the County's attention that PFA was requiring anyone wishing to take photographs on Ellsworth Drive to register first with PFA's security office. The Office of the County Attorney was asked to research whether PFA could restrict photography and other expressive activities in this manner. The County Attorney concluded that the roads and sidewalks of Downtown Silver Spring were public fora because of the physical characteristics of Downtown Silver Spring, its seamless incorporation with the surrounding roads and sidewalks, the lease's provision that PFA has no authority to restrict pedestrian ingress and egress, and the history of these roads and sidewalks as public fora. (*See* ECF No. 5-4, at 3-6). PFA could impose regulations on expression, but they had to be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. (*Id.* at 6-7). Presently, the County concedes that at minimum, it considers and treats the sidewalk as a traditional public forum.

After about thirty minutes of Plaintiff's preaching on
March 23, he was confronted by a private security guard for the
movie theater, who told him to stop preaching and handing out
literature on the corner because it was private property.
Plaintiff and the guard then discussed the matter with Defendant
Officer Norman W. Brissett of the Montgomery County Department
of Police. Officer Brissett confirmed that the property was
private and that Plaintiff and Ms. Mehaffey would have to move
across the street into Veterans' Plaza, a public park, if they
wanted to continue preaching and handing out literature. (*Id.*
¶¶ 58-64). As the conversation continued, Officer Brissett's
supervisor, Defendant Officer D.M. Smith arrived. Officer Smith
told Plaintiff that it is a common misconception that the
sidewalk in front of the movie theater is public property, but
in fact it is private property owned by the Peterson Companies,
which operate the movie theater.[1] Officer Smith equated the
sidewalk to one's house, where the police will act to expel
unwanted visitors. (*Id.* ¶¶ 71-75, 77). Ms. Mehaffey pointed
out that this sidewalk, unlike one's home, has been opened to
the public, but Officer Smith did not accept the distinction.
(*Id.* ¶ 78). Because the officers concluded that the property
was private, and because Plaintiff refused to vacate, they
issued Plaintiff a trespass notice that precluded him for one

---

[1] Peterson is part of the PFA group.

year from entering Downtown Silver Spring, all of which they believed was owned by PFA. (*Id.* ¶ 82; ECF No. 5-11). Plaintiff moved to Veterans' Plaza, attempted to preach his message, but found little success. He did not seek to speak elsewhere in Silver Spring out of fear of arrest. (ECF No. 9 ¶ 83).

Plaintiff believed that the sidewalk was not private property, and maintained that he had a right to preach there, provided he did not impede the flow of pedestrian traffic. On April 23, 2012, through counsel, Plaintiff wrote to a number of Montgomery County officials requesting that his First Amendment rights be respected in Downtown Silver Spring, and specifically requested: (1) immediate revocation of the trespass notice; (2) nominal damages for violating Plaintiff's constitutional rights; and (3) reasonable attorney's fees. (ECF No. 5-12). On May 18, 2012, the County Attorney for Montgomery County responded, stating that "[Plaintiff] was not banned from expressing his religious beliefs on a public sidewalk. . . . Instead, *because of pedestrian traffic flow and safety concerns on that property*, which is privately owned, the police asked [Plaintiff] to simply move to a nearby public area." (ECF No. 5-14, at 1 (emphasis added)). The County Attorney explained that the street corner in question is private property, but acknowledged that "because of its nature and location to adjoining sidewalks and walkways, it shares certain similarities with the more traditional forum

and *one could argue* that the area should be viewed as a public forum." (*Id.* at 2 (emphasis added)). The County made no such concession but stated that even so, "the government may impose time, place, and manner regulations which are content-neutral, narrowly tailored to serve a significant government interest, and which leave open ample alternative channels of communication." (*Id.*).

The letter went on to state that that corner of Ellsworth and Fenton is heavily trafficked, including when Plaintiff was preaching. According to the County Attorney,

> [b]ecause of where he was located, people traveling in the crosswalk to that corner either had to step out of the crosswalk or move to the left or right in order to get around [Plaintiff] to get to the sidewalk area. People trying to cross the road from that corner had to go around [Plaintiff] and sometimes had to step into the road outside of the crosswalk. Generally, his location "blocked" people from moving freely in that area and they were forced to go around him. With a heavy flow of pedestrian traffic, this also caused some pedestrians to "bump" into each other and to become "backed-up" causing congestion on that corner.

(*Id.*). The officers simply wanted Plaintiff to move across the street where there is more room, in order "to maintain an orderly flow of pedestrians and ensure the safety of the area." (*Id.*). The letter went on to note that Plaintiff was in violation of Montgomery County Code, Section 32-14, which prohibits an individual at, on, or in a public place or place

open to the public from interfering with or hindering the free passage of pedestrian or vehicular traffic. The County Attorney contended that the officers' request was a permissible time, place, and manner regulation but, nonetheless, the police agreed to vacate Plaintiff's trespass notice. Additionally, "the police *request* that [Plaintiff] continue to convey his religious beliefs at the alternative location so that the orderly and safe flow of pedestrian traffic in this area is maintained." (*Id.* at 3 (emphasis added)).

Plaintiff disputes the County's justifications on two bases. First, he argues that he was situated on the corner between the north-south and east-west crosswalks, thereby not blocking those paths, nor was the sidewalk so crowded that his presence was blocking pedestrians. Second, he maintains that Officers Smith and Brissett made no mention of any disturbance as the reason he was being told to move; instead, they repeatedly stated that he had to move because he was on private property. (ECF No. 9 ¶ 89). Plaintiff had a video camera along and filmed his interactions with Officers Smith and Brissett. The video reveals that neither officer made any reference to Plaintiff's interference with the flow of pedestrian traffic, instead consistently maintaining that Plaintiff had to vacate because the property owner was invoking his privilege of ejecting unwanted visitors. (ECF No. 5-10). As part of their

motion to dismiss, Defendants provided affidavits of Officers Smith and Brissett. Officer Brissett states that during the time in question, the spot where Plaintiff was preaching "was very crowded with people and . . . did, in my opinion, present problems with the flow of pedestrian traffic." (ECF No. 17-2 ¶ 6). He has worked as a police officer in that area for many years and states that there is a high volume of pedestrian traffic, the impediment of which presents a safety concern. (*Id.* ¶¶ 11-12). He acknowledges that his discussion with Plaintiff centered around his concern that the sidewalk was private property, but Plaintiff's location and his impact on the free flow of pedestrian traffic was also a concern, albeit unstated. Officer Brissett explained that he did not raise the pedestrian traffic concern because he "was trying to diffuse the private property issue raised by the security officer while still recognizing [Plaintiff's] desire to speak his message." (*Id.* ¶ 14). His desire to move Plaintiff to Veterans' Plaza was borne out of a concern for the safety of pedestrians in the area. Officer Smith's affidavit is substantially similar. (*See* ECF No. 17-3).

After Plaintiff filed his complaint in the instant suit, his attorney spoke with the County Attorney, which the County Attorney memorialized in a letter. This letter conceded that this sidewalk is in fact a traditional public forum on which

Plaintiff may preach, and that the trespass notice was indeed vacated. (ECF No. 6-3, at 1-2). Regardless of the perceived status of the sidewalk, the letter states that "[Plaintiff] was treated as if he was in a public forum. That is, he was not then and is not now precluded from expressing himself in the public forum." (*Id.* at 2). The letter also provided that

> as long as [Plaintiff] does not block the crosswalks in the Downtown Silver Spring area, impact the safety and free flow of pedestrian traffic, or otherwise act in a manner that violates the law, [Plaintiff] may continue to engage in his expressive activities in Downtown Silver Spring in the public areas, including sidewalks along Ellsworth Drive, subject to any time, place and manner restrictions.

(*Id.*).

## II. Procedural Background

On February 8, 2013, Plaintiff filed a verified complaint alleging that his First Amendment rights had been abridged by the County's complete ban on his speech. (ECF No. 1). On February 14, 2013, Plaintiff filed a motion for a preliminary injunction, to prevent the County from "applying its policy and practice of banning expression on sidewalks alongside the public streets in Downtown Silver Spring." (ECF No. 5, at 1). On May 31, 2013, the court denied Plaintiff's motion, concluding that he had not established that he was suffering actual, imminent, and irreparable harm because the trespass notice had been

vacated and Plaintiff was not precluded from expressing himself in the public forum. (ECF No. 22).

On March 22, 2013, Plaintiff filed an amended complaint correcting parties' names. (ECF No. 9). Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Montgomery County has a policy and practice of permitting a private entity to banish expression on the sidewalks of Downtown Silver Spring that he claims violates his First Amendment rights both on its face and as applied to Plaintiff. Further, Plaintiff claims the policy violates the Due Process Clause as it is vague and lacks sufficient objective standards to curtail the discretion of officials. Plaintiff requests entry of a judgment and decree that the policy is unconstitutional both on its face and as applied; a permanent injunction barring the County and other Defendants from enforcing the policy; an award of nominal damages; and attorney's fees and costs in accordance with 42 U.S.C. § 1988. On April 8, 2013, Defendants Montgomery County and Isiah Leggett filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment. (ECF No. 15). Plaintiff opposed the motion on April 12, 2013 (ECF No. 16), to which Defendants replied on April 26, 2013 (ECF No. 18). On that same day, Defendants Brissett and Smith filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment. (ECF No. 17). Plaintiff opposed the

motion on May 6, 2013 (ECF No. 19), to which Defendants replied on May 17, 2013 (ECF No. 21).

## III. Standard of Review

Defendants' motions are styled to dismiss, or in the alternative, for summary judgment. Because the parties rely on matters outside the pleadings, it is appropriate to construe the motions as ones for summary judgment.

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden of showing that there is no genuine dispute as to any material fact. However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine dispute for trial.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any

material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (*quoting Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## IV. Analysis

42 U.S.C. § 1983 authorizes a suit for damages against any individual "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." A plaintiff must allege: (1) a deprivation of a constitutional right or some right secured by the laws of the United States, and (2) that the deprivation was caused by a state actor. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Deprivation of Plaintiff's First Amendment right

Defendants do not dispute that Plaintiff's activity was speech protected by the First Amendment. Different levels of scrutiny apply to governmental action that allegedly prevents or impedes protected speech, depending on the type of forum wherein

the speech occurs.  The First Amendment protects speech in public places, and the degree of protection provided varies depending on the type of forum at issue.  *See Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Bos.*, 515 U.S. 557, 572–73 (1995).  Streets, parks and sidewalks are considered traditional public fora.  *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (noting that "[t]raditional public fora are defined by the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the property has been 'devoted to assembly and debate.'" (*quoting Perry Ed. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983))).

The parties agree that the sidewalk at issue qualifies as a "traditional public forum."  In such a forum, the level of scrutiny a court applies to a regulation depends on whether the regulation is deemed content-based or content-neutral.  Content-based regulation is subject to strict scrutiny and will only be upheld if narrowly tailored to serve a compelling governmental interest.  *United States v. Grace*, 461 U.S. 171, 177 (1983).  Content-neutral regulation will be upheld if it is "narrowly tailored to serve a significant governmental interest," and "leave[s] open ample alternative channels for communication of information.  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Plaintiff alleges that his First Amendment rights were violated when Officers Brissett and Smith cited him for trespassing simply because he was on private property for which the property owner had total discretion to expel persons it did not care for. Defendants acknowledge that the officers only spoke in terms of the nature of the property, but maintain that the officers in fact were expelling Plaintiff because of the issues with pedestrian traffic flow and safety implicated by his location on the sidewalk. Defendants argue that this was a content-neutral regulation which was narrowly tailored and left open ample avenues of communication, including Veterans' Plaza directly across Fenton Street. The County Attorney has consistently advanced this position in correspondence with Plaintiff's counsel and has provided affidavits of Officers Brissett and Smith that those were the actual concerns motivating their instructions.

The lease agreement between PFA and Montgomery County permits PFA to impose and enforce such reasonable rules and regulations as it deemed necessary to maintain order and to promote the safety, security, and economic success of Downtown Silver Spring, a traditional public forum. In effect, Montgomery County appears to permit PFA to regulate speech in a traditional public forum and, as happened here, to enlist the assistance of the police to enforce those restrictions.

Viewing the video in the light most favorable to the Plaintiff, his interaction with the security guard demonstrates that the security guard was motivated at least partially – if not solely – by his perception that the sidewalk was private property for which he could eject unwanted visitors which led him to ask the police to assist in excluding Plaintiff. (*See* ECF No. 5-10 (security guard asking Plaintiff whether "he would like a trespass notice? Where you'd be banned from this property?" Plaintiff asks: "Can I be using my First Amendment rights on public property?" Security guard responds: "Not when you are causing a disturbance to the people. And that's disorderly, is it not?")). The lease itself allowed regulation and restriction for economic reasons, as well as safety and security. The police arguably relied solely on the security guard's request, but the police certainly could not eject someone because PFA did not agree with the speaker's message as that would constitute a content-based "heckler's veto." Such a view is further bolstered by the fact that Plaintiff was cited only for trespass of private property, not inhibiting the flow of pedestrian traffic. Here, Plaintiff has presented sufficient evidence to raise a genuine dispute concerning the reasons why the PFA security guard asked Officers Brissett and Smith for their assistance in ejecting Plaintiff, and why the officers went ahead and ejected Plaintiff. Plaintiff's evidence,

construed in the light most favorable to him, could lead to the conclusion that Plaintiff was ejected because his speech was objectionable to PFA, a private party, which would constitute content-based regulation subject to strict scrutiny. Alternatively, if Plaintiff was ejected based on a content-neutral regulation, one could find that that was not narrowly tailored given the time of day and the speech's size, or lack thereof.

**B. Plaintiff's claims against Defendant Montgomery County**

A governmental entity like Montgomery County cannot be held liable under Section 1983 on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690 (1978). Instead, to find a municipality liable as a tortfeasor, its official policy or custom must have inflicted the injury. *Id.* at 694. Municipal policy arises from written ordinances, regulations, and statements of policy, *id.* at 690; decisions by municipal policymakers, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); and omissions by policymakers that show a "deliberate indifference" to the rights of citizens, *see City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The government policy or custom need not have received formal approval through the government's official decision making channels to subject the municipality to liability. *Riddick v. Sch. Bd. of City of Portsmouth,* 238 F.3d 518, 522 (4th Cir. 2000). Rather, a

municipality will be adjudged liable if the "alleged constitutional deprivation is caused by the official actions of those individuals whose edicts or acts may fairly be said to represent official policy." *Id.* at 523 (*citing Monell,* 436 U.S. at 694).

A plaintiff can also establish municipal liability through "custom or usage." To establish a municipal policy through this method of proof, a plaintiff must provide evidence of a "widespread and permanent practice," *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999), or produce recorded reports to or discussions by a municipal government body, *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). "It is well settled that isolated incidents of unconstitutional conduct by subordinate employees are not sufficient." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003). Thus, "Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

Plaintiff's complaint alleges that Defendant Montgomery County has a policy of "allow[ing] private entit[ies] to banish expression on sidewalks alongside the public streets of Downtown Silver Spring, including the sidewalk in front of the Regal

Majestic Movie Theatre at the intersection of Ellsworth Drive and Fenton Street." (ECF No. 9 ¶ 103). Plaintiff's opposition to the County's motion identifies two alleged unconstitutional municipal policies: (1) banning literature distribution in a public forum due to the interest of a private party; and (2) banning literature distribution in a public forum due to an interest in safe and orderly pedestrian traffic flow. (ECF No. 16, at 4). As evidence of the existence of these policies, Plaintiff takes the following path: first, Montgomery County ground leased the sidewalks and streets in Downtown Silver Spring to PFA, making it into private property which Montgomery County agreed to treat as such, including expelling any unwanted visitors, regardless of whether those visitors were engaging in First Amendment-protected activities. This understanding is reflected in the views of the private security guard who initially confronted Plaintiff, along with Officers Smith and Brissett, who each independently instructed Plaintiff to leave the corner because it was private property and the property owner had expressed its view that he was not welcome. These officers had worked that area for ten and thirty years, respectively, so it is fair to conclude at this stage that their views reflect Montgomery County's policy. Finally, Plaintiff was issued a trespass notice which stated that it was issued because Plaintiff "refused to leave when told to do so by

security." (ECF No. 5-11). A trespass notice must be initiated by the property owner, further cementing Plaintiff's view that the police officers were carrying out a policy of Montgomery County to infringe on protected First Amendment expression whenever a property owner expresses its displeasure.

Plaintiff also points to his correspondence with the Montgomery County Attorney's Office. In the May 18, 2012 letter, the County Attorney declares that the sidewalk at issue "is an area that is *privately owned* and serves as access to the theatre." (ECF No. 5-14, at 2) (emphasis added). The County Attorney's Office would not even concede that the area was a public forum, only considering it so for the sake of argument. (*See id.* ("one could argue that the area should be viewed as a public forum")). Plaintiff argues that only when he commenced litigation has the County Attorney, in an effort to deflect this litigation, finally acknowledged that the County considers and treats the area as a public forum. (ECF No. 15-4, at 2). Plaintiff appears to argue that these letters indicate that the County considers the area private property and will therefore effectuate the wishes of the property owner, including prohibiting otherwise protected speech.

Plaintiff does not attempt to attach Section 1983 liability to the County for the single alleged deprivation of constitutional rights on March 23, 2012. Axiomatically, the

unauthorized acts of subordinate employees are not official policies. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997). Plaintiff does not allege that Officers Brissett or Smith are policymaking officials. The lease and its interpretation allowing a private interest to regulate first amendment interests for private reasons could constitute a policy of abdicating responsibility for protecting First Amendment rights in the public forum without placing sufficient safeguards in place. Accordingly, the motion for summary judgment by Montgomery County will be denied.

### C. Plaintiff's claims against Defendants Isiah Leggett, Norman W. Brissett and D.M. Smith in their official capacities

Plaintiff also sued Isiah Leggett, County Executive for Montgomery County, and Officers Norman W. Brissett and D.M. Smith in their official capacities. Defendants contend that Plaintiff's claims against these Defendants should be dismissed as redundant to his claims against Montgomery County.

A claim against a public official in his or her official capacity is one way to assert a claim against the government of which the official is a part. Suits against local government officials in their official capacities "generally 'represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (*quoting Monell*, 436 U.S. at 690 n.55).

Consequently, "the real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Plaintiff states that Defendants' proposition is "novel," but the only cases he cites in support of his argument – *Hafer* and *Graham* – support exactly that "novel" proposition, namely that when claims are brought against a municipal official in his official capacity which are identical to claims brought against the municipality, the claims against the municipal official are redundant. Accordingly, summary judgment will be granted for Defendants Isiah Leggett, Norman W. Brissett, and D.M. Smith in their official capacities.

## D.  Plaintiff's claims against Defendants Norman W. Brissett and D.M. Smith in their personal capacities

Officers Brissett and Smith are named as Defendants also in their personal capacities. Defendants contend that Officers Brissett and Smith are entitled to qualified immunity. Qualified immunity is an affirmative defense to Section 1983 claims and "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In determining whether the legal right is

clearly established, it is critically important to avoid defining the applicable right at too abstract a level." *Rish v. Johnson*, 131 F.3d 1092, 1095-96 (4th Cir. 1997).

Two inquiries must be satisfied to determine whether an official is entitled to qualified immunity: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds in Pearson*, 555 U.S. at 236. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Batten v. Gomez,* 324 F.3d 288, 293-94 (4th Cir. 2003)). The burden is on the Plaintiff to prove that the alleged conduct violated the law, while the defendant must prove that the right was not clearly established. *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007). Finally, the court should make a ruling on the qualified

immunity issue "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier,* 533 U.S. at 200.

For the reasons discussed above, Plaintiff has presented sufficient evidence such that a reasonable factfinder could find that the officers violated his First Amendment rights. Therefore, Plaintiff has successfully defended the first prong of Defendants' qualified immunity defense.

The Fourth Circuit has addressed the requirements for meeting the second prong of the qualified immunity analysis.

> Although the exact conduct at issue need not have been held unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992) (explaining that "[t]he fact that an exact right allegedly violated has not earlier been specifically recognized by any court does not prevent a determination that it was nevertheless 'clearly established' for qualified immunity purposes" and that "'[c]learly established' in this context includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked").

*Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640

(1987).   "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Pearson*, 555 U.S. at 231 (internal quotation marks omitted).   An officer who makes an honest, but unreasonable mistake will not be protected.  *Henry v. Purnell*, 652 F.3d 524, 535 (4th Cir. 2011) (en banc).   The defense "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Waterman*, 393 F.3d at 476 (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"Clearly established rights" include

> specifically adjudicated rights as well as those manifestly included within more general applications of the core constitutional principles involved.  *Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir. 1998). There are three ways in which law becomes clearly established in Maryland: (1) an authoritative decision by the United States Supreme Court; (2) an authoritative decision by the Fourth Circuit Court of Appeals; or (3) an authoritative decision by the Court of Appeals of Maryland.  *Id.*  Decisions from other circuits or states are not authoritative for qualified immunity analysis.  *Id.*

*Gray v. Torres*, No. WDQ-08-1830, 2009 WL 2169044, at *2 (D.Md. July 17, 2009) (applied in the § 1983 context as to a state actor).

Qualified immunity applies "if officers of reasonable competence could disagree" on whether the conduct at issue was

unlawful. *Malley*, 475 U.S. at 341. If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability.

The parties frame the alleged clearly established right as a legal issue: should a reasonable officer in the position of officers Brissett and Smith have known that the sidewalk was a traditional public forum with all the First Amendment protections attendant with that designation? The Supreme Court of the United States has held that "'time out of mind' public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988). But not all sidewalks are public fora. The guidance from the Supreme Court has been to look to the characteristics of the sidewalk and preserve the speaker's reasonable expectations that his speech would be protected. *See United States v. Grace*, 461 U.S. 171, 177 (1983). In *Grace*, the Supreme Court reviewed a law that prohibited leafleting and picketing not only on private grounds, but also on the adjacent public sidewalks ringing the perimeter of the property. The Court held that the law did not apply to the public sidewalks because they "are indistinguishable from any other sidewalks in Washington, D.C., and we can discern no reason why they should be treated any differently." *Id.* at 179. The opinion distinguished this situation from that in *Greer v.*

*Spock*, 424 U.S. 828 (1976), where the Court held that the sidewalks and streets within Fort Dix that permitted free public access were not traditional public fora. At Fort Dix, the streets and sidewalks were located within an enclosed military reservation, and were thus separated from the streets and sidewalks of the city itself. Similarly, in *United States v. Kokinda*, 497 U.S. 720 (1990), the Court held that a sidewalk that led from a Post Office's parking lot to its front door was not a traditional public forum because it did not have the characteristics of "public sidewalks traditionally open to expressive activity." *Id.* at 727. The sidewalk did not run parallel to a public road; instead, it was "constructed solely to assist postal patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city." *Id.* at 728. In *Grace*, by contrast, "[t]here is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave." 461 U.S. at 180; *see also Ark. Educ. Television Comm'n*, 523 U.S. at 677 ("Traditional public fora are defined by the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the

property has been devoted to assembly and debate." (*quoting Perry Ed. Ass'n*, 460 U.S. at 45)).

The Fourth Circuit considered this issue in *Warren v. Fairfax County*, 196 F.3d 186 (4th Cir. 1999) (en banc). Sitting *en banc*, the Fourth Circuit reviewed Supreme Court case law distinguishing between the different fora, and found multiple factors relevant, including the property's location, the objective use and purposes of the property, and government intent and policy with respect to the property, which may be evidenced by its historic and traditional treatment. *Id.* at 191 (collecting cases). None of the factors are dispositive. The Fourth Circuit held:

> The typical traditional public forum is property which has the physical characteristics of a public thoroughfare, which has the objective use and purpose of open public access or some other objective use and purpose inherently compatible with expressive conduct, and which by history and tradition has been used for expressive conduct. The archetypical examples of traditional public fora are streets, sidewalks, and parks.

*Id.* (internal citations omitted).

The sidewalk, based on the lease agreement between Silver Spring and PFA, reserved to the County an easement for the portion of Ellsworth Drive at issue. This easement defined the area as "Public Use Space," which the County Code provides is "'[s]pace required by the sector plan and other space devoted to

28

such uses as space for public enjoyment.'" (ECF No. 5-4, at 2 (*quoting* Section 59-A-2.1 of the Zoning Ordinance of Montgomery County)). The County retained an easement and right of passage and use for pedestrian and vehicular ingress and egress on, over, and across the public use spaces, upon which PFA could impose and enforce such reasonable rules and regulations PFA deems necessary to maintain order and to promote the safety, security, and economic success of Downtown Silver Spring. (*Id.*).

Those facts were laid out in a legal opinion by the County Attorney's Office following the June 2007 photography row in Downtown Silver Spring. That opinion outlined the case law as to what constitutes a traditional public forum, much of it identical to that reproduced above. When it came time to apply the legal principles to the circumstances of Downtown Silver Spring, the opinion states that that area

> historically [has] been used as public fora and [is] conducive to expressive activity. . . . More specifically, the streets, sidewalks and walkways in this case are not in anyway distinguishable from other, publicly owned streets, sidewalks or walkways; they form a part of both the vehicular and pedestrian transportation grids of downtown Silver Spring, and are not marked "private." Further, [PFA] has no power under the lease to restrict pedestrian ingress or egress over these areas. . . . Before the County leased these spaces to [PFA], they were public fora. Thus, interior Ellsworth is a public forum.

*Id.* at 6. County Executive Leggett provided this opinion to PFA in a letter and Defendants have not disclaimed it; on the contrary, they have adopted the same position in this litigation. An independent review of the circumstances of the sidewalk and the operative legal principles lead to an identical conclusion: the sidewalk was and is a traditional public forum. *See U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 133 (1981) ("a suburban township [] may not by its own *ipse dixit* destroy the 'public forum' status of streets and parks which have historically been public forums.").

This legal conclusion was clearly established on March 23, 2012. While no Supreme Court or Fourth Circuit case has ruled on a situation akin to that in Downtown Silver Spring, the Fourth Circuit in *Warren* has held that where there is a "thoroughfare," a traditional public forum exists. 196 F.3d at 191. To reiterate: the sidewalk is adjacent to Ellsworth Drive and Fenton Street, two public thoroughfares; the sidewalk is indistinguishable from other public sidewalks and is integrated into the street grid; the County maintained an easement and right of passage as a space for public enjoyment; and the sidewalk has historically been a traditional public forum.[2]

---

[2] In his interaction with Plaintiff as captured in the video, Officer Smith alludes to the expectations of a reasonable pedestrian on the sidewalks of Downtown Silver Spring by telling

Therefore, Defendants have not established as a matter of law that a reasonable officer in Brissett and Smith's position should not have known that the sidewalk was a traditional public forum and that persons using it for expressive activities were entitled to First Amendment protections, including not being removed or issued trespass notices simply because the private property owner says so. This conclusion is bolstered by the existence of the County Attorney's July 30, 2007 opinion and the letter of County Executive Leggett, both of which come from sources much closer to the beat of a Montgomery County police officer than a federal court in Richmond or Washington, D.C.

Defendants contend that even *Warren* stated that a sidewalk with the characteristics and access of a traditional public forum is not always a public forum, as "[o]ccassionally, further inquiry may be necessary." *Warren*, 196 F.3d at 192. But the two cases the *Warren* court cites for that admonishment – *Greer* and *Kokinda* – deal with very different circumstances. *Greer* was a military base; *Kokinda* was a walkway constructed specifically to support a post office, removed from the street grid. Downtown Silver Spring, by contrast, has historically been opened to the public and the public has been encouraged to

_____

Plaintiff that "a lot of people would think that this is actually a [sic] public property, ok, however this street – Ellsworth Drive, ok – is owned by Peterson company." (ECF No. 15-10).

congregate there.  Presumably, that was one of the goals of the Downtown Silver Spring development.  Defendants' attempt to equate the characteristics of Ellsworth Drive to the sidewalks in *Greer* and *Kokinda* is unconvincing.  Therefore, at this stage of the proceedings, Plaintiff has demonstrated facts sufficient to repel a motion for summary judgment on the question of whether Officers Brissett and Smith violated his First Amendment rights, and Defendants have failed to show that Plaintiff's First Amendment rights were not clearly established at the time of the alleged violation.

## V.    Conclusion

For the foregoing reasons, the motions to dismiss or, in the alternative, for summary judgment filed by Defendants Montgomery County, Isiah Leggett, Norman W. Brissett, and D.M. Smith will be granted in part and denied in part.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
