IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL CORRAL                    :

                                    :

    v.                           :   Civil Action No. DKC 13-0444

                                      :

MONTGOMERY COUNTY, et al.         :

                                      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this First Amendment case is a motion for attorneys' fees and costs filed by Plaintiff Michael Corral.  (ECF No. 34).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Plaintiff's motion will be granted in part and denied in part.

**I.  Background**

Plaintiff brought claims under 42 U.S.C. § 1983, alleging violations of the First Amendment and the Due Process Clause of the Fourteenth Amendment against Defendants Montgomery County, Isiah Leggett, D.M. Smith, and Norman W. Brissett.  Plaintiff alleged that on March 23, 2012, he was exercising his First Amendment speech rights on a sidewalk corner in Downtown Silver Spring when he was unjustifiably removed and issued a trespass notice by Montgomery County police officers Smith and Brissett.  A private security guard apparently requested that Plaintiff

vacate what the security guard believed was private property. Plaintiff alleged that the sidewalk was a traditional public forum and, consequently, he was ejected for an impermissible reason.  In a complaint filed on February 8, 2013, he alleged that Montgomery County has a policy and practice of permitting a private entity to banish expression on the sidewalks of Downtown Silver Spring.  Plaintiff argued that this policy and practice violated his First Amendment rights both on its face and as applied to Plaintiff.  Further, Plaintiff claimed the policy violates the Due Process Clause as it is vague and lacks sufficient objective standards to curtail the discretion of officials.  He requested entry of a judgment and decree that the policy is unconstitutional both on its face and as applied; a permanent injunction barring the County and other Defendants from enforcing the policy; an award of nominal damages; and attorneys' fees and costs in accordance with 42 U.S.C. § 1988. (ECF No. 9).

On February 14, 2013, he moved for a preliminary injunction to prevent the County from "applying its policy and practice of banning expression on sidewalks alongside the public streets in Downtown Silver Spring." (ECF No. 5, at 1).  On May 31, 2013, the court denied Plaintiff's motion, concluding that he had not established that he was suffering actual, imminent, and

irreparable harm because the trespass notice had been vacated and Plaintiff was not precluded from expressing himself in the public forum. *Corral v. Montgomery Cnty.*, No. DKC 13-444, 2013 WL 2420454 (D.Md. May 31, 2013). Two motions to dismiss or, in the alternative, for summary judgment were filed: one by the County and Leggett, the other by Brissett and Smith. Plaintiff opposed each, and there were replies.

On March 5, 2014, by memorandum opinion and order, the court granted in part and denied in part both motions. *Corral v. Montgomery Cnty.*, 4 F.Supp.3d 739 (D.Md. 2014). Judgment was granted in favor of Leggett, Brissett, and Smith for all claims brought against them in their official capacities, as those claims were redundant given that Plaintiff had also sued the County for the exact same alleged wrongs. In regard to the other claims, it was necessary first to determine whether there was a genuine dispute that Plaintiff's First Amendment rights had been infringed. The parties agreed that the sidewalk at issue qualified as a "traditional public forum" and as such, content-based regulations were subject to strict scrutiny. Defendants argued that Plaintiff was ejected based on his impeding of sidewalk traffic, which would be a permissible content-neutral, time, place, and manner restriction. The court found, however, that, based on the evidence, there was a genuine

dispute as to whether the security guard was motivated by his perception that the sidewalk was private property for which he could eject unwanted visitors which led him to ask the police to assist in excluding Plaintiff.   Furthermore, there was evidence that the police relied solely on the security guard's request, which would constitute a content-based "heckler's veto."

Finding there was a dispute as to whether Plaintiff's First Amendment rights were violated, liability against the County for the actions of its officers would lie only if Plaintiff could show there was a genuine dispute that the officer's actions arose from an official policy or custom.   The court found that the County's lease with the private developer of Downtown Silver Spring, effectively allowing a private interest to regulate First Amendment interests for private reasons, could constitute a policy of abdicating responsibly for protecting First Amendment rights in the public forum without sufficient safeguards in place.   Accordingly, summary judgment to the County was denied.

Finally, Plaintiff brought claims against Brissett and Smith in their personal capacities.   Both argued they were entitled to qualified immunity.   Employing the two-prong *Saucier* test, the court first determined that Plaintiff had presented sufficient evidence such that a reasonable factfinder could find

that the officers violated his First Amendment rights.   The second prong asks whether the right violated was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful.   The allegedly clearly established right was whether a reasonable officer in the position of Brissett and Smith would have known that the sidewalk was a traditional public forum. The court found that there was a genuine dispute as to whether a reasonable officer would have known that the sidewalk was a traditional public forum given that the sidewalk is adjacent to two public thoroughfares; it is indistinguishable from other public sidewalks and is integrated into the street grid; the County maintained an easement and right of passage as a space for public enjoyment; and the sidewalk has historically been a traditional public forum.   Smith and Brissett had not established that they were entitled to qualified immunity at this stage of the proceedings, and the claims against them in their individual capacities were permitted to proceed, along with the claims against the County.

The parties subsequently filed a consent motion and judgment which was approved by the court on April 28, 2014:

> 1. This Court hereby declares that Plaintiff Michael Corral was unconstitutionally banned from expressing his religious viewpoints at

the intersection of Fenton Street and
Ellsworth Drive on March 23, 2012.

2. Defendant Montgomery County shall pay
Plaintiff the amount of $1.00 as nominal
damages.

3. Defendant Montgomery County shall also
pay taxable costs, plus reasonable attorney
fees and allowable expenses to Plaintiff's
attorneys in an amount to be determined by
the Court upon motion.

4. The Court retains jurisdiction of this
case solely to enforce the terms of this
consent order and judgment.

(ECF No. 30).   Plaintiff dismissed with prejudice his claims

against Brissett and Smith.   (ECF Nos. 31-33).   Plaintiff filed

a motion for attorneys' fees on May 7, 2014, requesting $106,221

in attorneys' fees and $2,636.43 in costs.   (ECF No. 36).   On

June 23, 2014, Defendant Montgomery County filed an opposition

(ECF No. 37), to which Plaintiff replied on July 2, 2014,

wherein he requested an additional $13,050 in attorneys' fees

incurred in preparing the reply (ECF No. 38).[1]

## II.  Analysis

### A.  Plaintiff is entitled to attorneys' fees

Under 42 U.S.C. § 1988, "the court, in its discretion, may

allow the prevailing party . . . a reasonable attorney's fee as

---

[1] The parties stipulated to the dismissal of Defendants
Brissett and Smith on April 29, 2014.   (ECF Nos. 31 and 32).
Because only Defendant Montgomery County remains, it will be
referred to as a "Defendant" (singular).

part of the costs."  "The purpose of [Section] 1988 is to ensure effective access to the judicial process" for persons with civil rights grievances.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quotation marks and citation omitted).  "Congress enacted [Section] 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) (citations omitted).  Congress attributed this market failure in part to the fact that "[t]hese victims ordinarily cannot afford to purchase legal services at the rates set by the private market." *Id.* (citations omitted).  "The first determination to be made by the district court is whether the plaintiff is a prevailing party.  The second determination is whether an award of attorney's fees should be granted to the prevailing party and what amount would be reasonable under the specific circumstances of the case." *Feldman v. Pro Football, Inc.*, 806 F.Supp.2d 845, 847 (D.Md. 2011).

The Supreme Court of the United States noted that "[a] typical formulation is that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."

7

*Hensley*, 461 U.S. at 433 (*quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978) (quotation marks omitted)); *see also Tex. State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 792 (1989) ("at a minimum, to be considered a prevailing party within the meaning of [Section] 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."). In addition to judgments on the merits, settlement agreements enforced through a consent decree may serve as the basis for an award of attorneys' fees because it is a court-ordered change in the legal relationship between the plaintiff and the defendant. *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 604 (2001) (*citing Maher v. Gagne*, 448 U.S. 122, (1980); *quoting Tex. State Teachers*, 489 U.S. at 792).

Defendant acknowledges that Plaintiff is the prevailing party, but contends that this fact alone does not entitle Plaintiff to attorneys' fees. Indeed, a prevailing party is only "eligible for, rather than entitled to, an award of attorney's fees. Although [Plaintiff] is a prevailing party, the district court has discretion to determine what constitutes a reasonable fee, a determination that requires the court to consider the extent of the plaintiff's success." *Mercer v. Duke*

*Univ.*, 401 F.3d 199, 203 (4ᵗʰ Cir. 2005).   Defendant contends that the receipt of only nominal damages signifies that Plaintiff's success was technical or *de minimis*, and therefore he is not entitled to any fees.

In determining whether attorneys' fees are warranted in a nominal damages case, the United States Court of Appeals for the Fourth Circuit has utilized the three factors outlined by Justice O'Connor in her concurrence in *Farrar v. Hobby*, 506 U.S. 103, 122 (1992): "the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served" by the litigation.   *Mercer*, 401 F.3d at 204 ("We believe that the factors set forth by Justice O'Connor help separate the usual nominal-damage case, which warrants no fee award, from the unusual case that does warrant an award of attorney's fees.") (*quoting Farrar*, 506 U.S. at 122 (O'Connor, J., concurring)).

"When considering the extent of the relief obtained, [the court] must compare the amount of the damages sought to the amount awarded."   *Mercer*, 401 F.3d at 204.   The plaintiff's purpose in bringing the lawsuit is relevant only to the extent that it distinguishes an action seeking monetary relief from one seeking injunctive or declaratory relief.   "If a case sought injunctive relief, the relevant comparison, of course, would be

9

the scope of the injunctive relief sought to the relief actually granted." *Id.* at 205.

In his amended complaint, Plaintiff brought two claims. First, he alleged that Defendants' policy and practice that allows a private entity to banish expression on the sidewalks of Downtown Silver Spring and bans religious speech violates the First Amendment.   Second, Plaintiff argued that Defendants' policies violate the Due Process Clause because they are vague and lack sufficient objective standards to curtail the discretion of officials.  Plaintiff sought primarily injunctive and declaratory relief, specifically: (1) a judgment and decree that the County's policy and practice of permitting a private entity to control expression on public sidewalks in Downtown Silver Spring is unconstitutional on its face and as applied violates the First Amendment; (2) a judgment and decree that the County's ban on religious expression on public sidewalks in Downtown Silver Spring is unconstitutional on its face and as applied because it violates the First Amendment; (3) a preliminary and permanent injunction enjoining Defendants and their agents and employees from applying these two allegedly unconstitutional policies; (4) adjudication and declaration of the rights and other legal relations with the subject matter in controversy; (5) an award  of nominal damages from the acts of

the Defendants as vindication of his constitutional rights; and (6) attorneys' fees. (ECF No. 9, at 22-23).

Defendant argues that Plaintiff asked for a lot and got very little. He asked for a preliminary injunction, which was denied as Plaintiff's First Amendment rights currently were not being denied, and were unlikely to be denied in the future. Plaintiff's trespass notice had been vacated, and a letter from the County Attorney following the commencement of the lawsuit informed Plaintiff that he was not precluded from expressing himself in the public forum. (ECF No. 6-3). Plaintiff received no relief of any kind on his Due Process claim and no injunctive relief on his First Amendment claim; the consent order only declared that Plaintiff's First Amendment rights were violated on March 23, 2012, with no finding that there was any unconstitutional policy or practice. His only relief was against the County, as the claims against the individual officers were dismissed with prejudice. (ECF Nos. 31 and 32). The County argues that there is a great disparity between the relief sought and the relief obtained, which weighs against awarding attorneys' fees.

Plaintiff disagrees with the County's assessment. First, he asked for nominal damages and received nominal damages. In terms of the lack of injunctive relief, Plaintiff argues that he

achieved this relief through the County changing its policy *in response* to the filing of this lawsuit, although such a change is not reflected in the consent order.   On April 23, 2012, Plaintiff, through his counsel, wrote a letter to the County outlining the events on March 23, 2012, and why he believed the County's actions violated the First Amendment.   He sought immediate revocation of the trespass warning, nominal damages, and reasonable attorneys' fees.   (ECF No. 5-13).   He contends that the County's response on May 18, 2012 offered no meaningful relief.   While acknowledging that the County vacated the trespass notice, Plaintiff points to the fact that the County Attorney wrote that the area is privately owned, only acknowledging that the area "shares certain similarities with the more traditional forum and one could argue that the area should be viewed as a public forum."   The letter goes on to state that Plaintiff was asked to move because he was hindering safe pedestrian flow, not for any content-based reason.   The County would not admit to the area being a public forum, and echoed the police's "request that Mr. Corral continue to convey his religious beliefs at the alternative location [across the street] so that the orderly and safe flow of pedestrian traffic in this area is maintained."   (ECF No. 5-14).   Only once he initiated litigation did Corral receive the relief he sought.

While acknowledging that the need for injunctive relief had become moot at the time of his motion for such, he contends that the change in circumstances only occurred in response to his lawsuit.[2]

The County Attorney's March 4, 2013 letter does take a strikingly different tone than her previous pronouncements. While not admitting any change in position, she states that "the County considers and treats Ellsworth Drive as a public forum," and was treated as such by the officers the previous March. She goes on to state that Plaintiff is not banned from the sidewalks of Downtown Silver Spring: "as long as he does not block the crosswalks in the Downtown Silver Spring area, impact the safety and free flow of pedestrian traffic, or otherwise act in a manner that violates the law, Mr. Corral may continue to engage in his expressive activities in Downtown Silver Spring in the public areas, including sidewalks along Ellsworth Drive, subject to any time, place and manner restrictions as noted." (ECF No. 6-3).

---

[2] Plaintiff's other argument that the court agreed to award some attorneys' fees by accepting the consent order which stated that "Defendant Montgomery County shall also pay taxable costs, plus *reasonable* attorney fees and allowable expenses to Plaintiff's attorneys in an amount to be determined by the Court upon motion," (ECF No. 30) is misplaced. (emphasis added). As discussed above, there are instances - especially in civil rights cases where only nominal damages are awarded – where awarding no attorneys' fees is considered "reasonable."

While the Supreme Court has rejected the idea that the "catalyst theory" is an appropriate means of determining whether the plaintiff was a prevailing party, *Buckhannon*, 532 U.S. at 604-05, the Fourth Circuit has held that "Justice O'Connor's concurrence in *Farrar* and our own *Mercer* opinion plainly invite district courts to engage in a more robust inquiry to decide whether a prevailing party that wins only nominal damages is entitled to any attorney's fees." *Project Vote/Voting for Am., Inc. v. Dickerson*, 444 F.App'x 660, 663 (4th Cir. 2011); *see also Benton v. Or. Student Assistance Comm'n*, 421 F.3d 901, 907 (9th Cir. 2005) ("*Buckhannon* did not address the issue of the factors to be applied in determining the reasonableness of an attorney's fee award to a prevailing party.").

Plaintiff did not achieve his goal of obtaining an adjudication that the County had an unconstitutional policy or practice, but that lack of success was not due to a judicial decision that the claims were meritless. Instead, the lawsuit was resolved through settlement. *See Farrar*, 506 U.S. at 115 ("When a plaintiff recovers only nominal damages *because of his failure to prove an essential element of his claim for monetary relief*, [] the only reasonable fee is usually no fee at all." (emphasis added)). As pointed out in *Lefemine v. Wideman*, 758 F.3d 551, 555 (4th Cir. July 11, 2014):

14

> "Courts have universally recognized that [the] special circumstances exception is very narrowly limited." *Doe v. Bd. of Educ. of Baltimore Cnty.*, 165 F.3d 260, 264 (4th Cir. 1998) (quotation marks and citation omitted). Indeed, "[o]nly on rare occasions does a case present such circumstances...." *Id.* *See also, e.g.*, *DeJesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 200 (1st Cir. 2009) (stating that the special circumstances justifying denial of attorneys' fees are "few and far between").

*See also*, *Wolfe v. Routzahn*, 953 F.Supp.2d 627, 636 (D.Md. 2013) (collecting cases where courts awarded fees even where damages awarded were nominal). Plaintiff's success is not as limited as Defendant contends and does not foreclose an award of any attorneys' fees.

The second factor in *Farrar* is the significance of the legal issue on which the plaintiff prevailed. "This factor is concerned with the general legal importance of the issue on which the plaintiff prevailed." *Mercer*, 401 F.3d at 206. Defendant argues that the legal significance is negligible as the trespass order was vacated long before Plaintiff filed suit, and the County informed Plaintiff almost immediately after it was served that he could return to the subject area. Defendant points to the court's ruling on the preliminary injunction motion that Plaintiff's First Amendment freedoms were not being violated currently and will not likely be violated in the future. Defendant also finds significant that the only person

impacted by any County wrongdoing was Plaintiff, and not a wider swath of the community.

Defendant's arguments are unconvincing. The issue presented need not be groundbreaking or novel; instead, it is focused on the "general legal importance" of the issue on which Plaintiff prevailed. "[I]t is well-established that our First Amendment right to speak freely in public forums is a significant legal issue." *Project Vote*, 444 F.App'x at 664 (*citing Goulart v. Meadows*, 345 F.3d 239, 248 (4th Cir. 2003)). This factor also weighs in favor of awarding fees.

The final factor "is whether the litigation served a public purpose, as opposed to simply vindicating the plaintiff's individual rights." *Mercer*, 401 F.3d at 207 (*citing Carter v. Burch*, 34 F.3d 257, 266 (4th Cir. 1994) (affirming denial of attorneys' fee to plaintiff who received only nominal damages, in part because the case "involved no broad civil rights issues")). The County argues that there was no finding of an unconstitutional policy, and the relief Plaintiff obtained applied to him alone as to the events on one particular date. Furthermore, the crux of the relief sought was not the result of the litigation, as that relief was given to Plaintiff nine months before he filed suit.

These arguments will be rejected.   The Fourth Circuit's reasoning in *Project Vote*, 444 F.App'x at 664, is persuasive:

> Unlike the plaintiff in *Farrar*, Plaintiffs never sought any extravagant or personal financial benefit.   Instead, Plaintiffs wished only to vindicate our collective First Amendment rights.   *See Shaw v. Hunt*, 154 F.3d 161, 167 (4th Cir. 1998) ("[R]ecovery under § 1988 is meant to reward those who have undertaken successfully to fulfill the role of a private attorney general.").   While the settlement and receipt of nominal damages did little for Plaintiffs personally, their victory undoubtedly signaled to [Defendant] the importance of ensuring that its regulations do not intrude upon our most basic constitutional and democratic rights.   *See Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (holding that a fee award was justified because the ruling against the defendants would encourage the defendants to comply with the First Amendment going forward).

Furthermore, the principal case Defendant relies upon, *Lefemine v. Wideman*, No. 8:08-3638-HMH, 2013 WL 1499152 (D.S.C. Apr. 9, 2013), was recently reversed by the Fourth Circuit, finding that qualified immunity, the absence of a policy or custom of discrimination, and the award of mere declaratory and injunctive relief were not the "special circumstances" that justified not awarding a prevailing plaintiff attorneys' fees.[3]   *Lefemine*, 758 F.3d at 553.   The County also points to *Chastang v. Flynn &*

---

[3]   The court appreciates the County's letter noting this recent unfavorable authority.   (ECF No. 40).

*Emrich Co.*, 521 F.2d 1040, 1045 (4th Cir. 1976), where the Fourth Circuit denied attorneys' fees under Section 1988 because the plaintiffs' suit did not vindicate civil rights due to the fact that the discriminatory aspects of the policy were cured before the plaintiffs' lawsuit was filed.  Here, by contrast, it appears that the County changed its position in response to the lawsuit, as it would not acknowledge that the sidewalk was a traditional public forum and that Plaintiff's First Amendment rights were violated until after the lawsuit was filed.  In sum, Plaintiff's award of mere nominal damages in this case does not justify denying him attorneys' fees.

**B.   Calculation of Reasonable Attorneys' Fees**

Having concluded that Plaintiff is deserving of some attorneys' fees, the Fourth Circuit has outlined the next steps:

> The proper calculation of an attorney's fee award involves a three-step process.  First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.  To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones.  Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

*McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013).  The *Johnson* factors, as characterized by the Fourth Circuit, are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.  *Id.* at 88 n.5.[4]

---

[4]  The Supreme Court recently appeared to question the *Johnson* approach, describing it as an "alternative" to the lodestar method and explaining that it provides too little guidance for district courts and places too great of an emphasis on subjective considerations. *See Perdue v. Kenny A.,* 559 U.S. 542, 551-52 (2010) ("[T]he lodestar method is readily administrable, and unlike the *Johnson* approach, the lodestar calculation is objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." (internal citations omitted)). Nonetheless, "the *Johnson* factors, as opposed to the *Johnson* method, are still relevant in informing the court's determination of a reasonable fee and a reasonable hourly rate"; "[*Perdue*] cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant

"[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Id.* at 244 (*quoting Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990)). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award," including, for example, "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.* at 244, 245 (internal quotation marks omitted).

Plaintiff's attorneys are: Mr. Nathan Kellum, Chief Counsel at the Center for Religious Expression ("CRE"), a non-profit legal group in Memphis, Tennessee, and Mr. John Garza of Garza, Regan & Associates P.C. They represent that they spent 265.2 hours on this case and request the following hourly rates: $450 for Mr. Kellum and $390 for Mr. Garza. (ECF Nos. 36-1 and 36-3). The 265.2 hours were divided between co-counsel in the following manner: 259.5 for Mr. Kellum and 5.7 hours for Mr.

*Johnson* factors in helping to come to a reasonable fee." *Spencer v. Cent. Servs., LLC,* No. CCB-10-3469, 2012 WL 142978, at **5-6 (D.Md. Jan. 13, 2012) (internal quotations marks and citations omitted).

Garza.   (ECF Nos. 36-2, 36-4, and 38-4).[5]   Defendant disputes both the hourly rates and the hours expended.

## A.   Hourly Rate

Plaintiff submits affidavits from Mr. Kellum and Mr. Garza in support of their requested rates.   Mr. Kellum avers he has been practicing law for over fifteen years and has been lead counsel on a number of free speech cases, including many reported decisions in federal courts of appeals.   He represents that CRE maintains office internal hourly rates for the calendar year.   For 2013 and 2014, Mr. Kellum's hourly rate was $450.00, while in 2012 it was $410.00.   He states that Plaintiff knew of no competent attorney in the District of Maryland willing to take his case.   He states that his $450.00 hourly rate is consistent with the rate he is seeking for work done on an ongoing case in the United States District Court for the District of Minnesota.   (ECF No. 36-1).

Mr. Garza has practiced law for over thirty years, entirely with the law firm of Garza, Regan, and Associates.   While he charges more or less for different types of engagements, for the years 2013 and 2014, his general hourly rate was $390, the

---

[5] Plaintiff represents that he is seeking 6.4 hours for Mr. Garza.  Mr. Garza's attached billing record, however, only adds up to 5.7 hours.  (ECF No. 36-4).  This lower figure will be used in determining fees to be awarded.

amount he seeks here.    Based on his experience and knowledge of this region, he states that comparatively few lawyers practice in the field of Section 1983 claims, and none that do so on a full-time basis.    He confirms that Plaintiff knew of no competent attorney in Maryland who would take his case when he was contacted for representation.    Finally, over his thirty-plus years of experience practicing in this area, he has often discussed with other local lawyers the hourly rates commonly charged for complex litigation.    Recent research reveals that attorneys with Mr. Garza's experience routinely charge between $350 and $450 per hour.    (ECF No. 36-3).

Plaintiff also submits a declaration from Mr. Alexander Vincent regarding Mr. Kellum's requested rate.    He has practiced in the Washington, D.C. area since 2000, has been barred in Maryland since 2007, and is a member of this court's bar.    He is a shareholder with the firm of Shulman, Rogers, Gandal, Pordy & Ecker, P.A.    His practice is devoted to complex commercial litigation, but he has also successfully asserted First Amendment defenses on behalf of clients who faced common law libel and invasion of privacy claims.    In his firm, all senior litigators routinely bill above $450.00 for complex commercial cases, and all shareholders with more than twenty years of experience charge at least $500.00 per hour.    According to Mr.

22

Vincent, from observations and discussions with members of other firms in Montgomery County, Maryland who regularly practice before this court, hourly rates are typically between $400.00 and $600.00 per hour for complex commercial or white-collar defense matters.

He also made inquiries with The Beckett Fund for Religious Liberty, a Washington, D.C.-based, non-profit, public-interest legal and educational institute with a mission to protect the free expression of all faiths, and a Washington, D.C.-based litigator with nearly thirty years practice and extensive experience litigating religious-freedom cases.   Through these inquiries, Mr. Vincent learned that Mr. Kellum's $450/hour requested rate is "significantly below what boutique practices in Washington, D.C. would charge for similar services by practitioners with the same or fewer years in practice as Mr. Kellum." (ECF No. 36-5 ¶ 15).   Furthermore, there are very few lawyers practicing before this court or even within the entire Washington, D.C. area who devote themselves to First Amendment litigation on a full-time basis.   "Thus, it is virtually impossible to define the relevant market in this case as confined to First Amendment practitioners in this County." (*Id.* ¶ 16).   Nevertheless, after having reviewed the pleadings and briefings, Mr. Vincent was "convinced that the research and

analysis that was necessary to prevail is very similar to that which I and similarly situated colleagues in Montgomery County have undertaken in complex commercial matters." (*Id.* ¶ 16). Finally, as to Mr. Garza, Mr. Vincent stated that "[g]iven Mr. Garza's level of skill and experience, and my knowledge of the prevailing market rate for similarly skilled and experienced Montgomery County lawyers in commercial litigation matters, it is my opinion that Mr. Garza's requested rate in this case is certainly within, and perhaps slightly below, that rate." (*Id.* ¶ 26).

Defendant makes numerous arguments against these requested hourly rates. As a threshold matter, it points out that in an email sent to Defendant on March 14, 2014, for the purpose of providing updated legal fees, Plaintiff represented Mr. Kellum's hourly rate as $410.00 and Mr. Garza's as $390.00. (ECF No. 37-2). This was confirmed in Plaintiff's counteroffer on the attorneys' fee issue sent to the County on March 28, 2014. (ECF No. 37-7). While the current local rules provide a guideline of $300-475/hour for lawyers with twenty or more years of experience, those guidelines only went into effect on July 1, 2014. Under the previous version of the rules, the top of the guideline range for lawyers with Mr. Kellum's experience was $400.00/hour. As Plaintiff points out, however, the prior

version of the rules was promulgated in 2008, and allowed adjustments upwards to account for an increase in the cost of legal services since the guidelines' adoption.

Defendant further argues that the requested hourly rates are too high because this case did not present novel or complicated issues. From Defendant's perspective, this was a rather rudimentary dispute involving the First Amendment status of a public sidewalk. It cites to *Trimper v. City of Norfolk, Va.*, 846 F.Supp. 1295, 1304 (E.D.Va. 1994), *aff'd*, 58 F.3d 68 (4th Cir. 1995), but that case involved what the plaintiff's own counsel deemed the most blatantly unconstitutional permit law he had ever seen. And the court noted that the violation was so obvious that even the least skilled law student would have recognized the issue and solution. This case is not so simple. The interaction between a sidewalk that appeared public with the County's lease to a private entity complicated this case.

Defendant next contends that the evidence Plaintiff submitted in support of his requested rates is insufficient. Defendant argues that Mr. Kellum's representation that he contacted unidentified local practitioners is inadequate. Defendant believes Mr. Garza's and Mr. Vincent's declarations are flawed because they compare the proposed hourly rates to complex commercial litigation, which is not similar work.

25

Again, the County cites to *Trimper*, which declined "mechanically [to] apply rates which are charged by experienced attorneys in complex civil matters to determine the appropriate hourly rate to be allowed an attorney in a civil rights case." 846 F.Supp. at 1305. Unlike in that case, Mr. Vincent surveyed First Amendment attorneys who practice in the Washington, D.C. area and found that Mr. Kellum's rate is well below those fees. The County contends that the District of Maryland is not Washington, D.C., where legal rates are considerably higher. That may be so, but Mr. Kellum is not asking for Washington, D.C.-level fees. His fees are lower and within this court's guidelines.

The County also takes issue with the requested rates because the issues in this case did not involve an experienced First Amendment attorney and, furthermore, Mr. Kellum belied his supposed experience and skill by vastly overlitigating this case, citing again to *Trimper*. As discussed above, however, this case was not as simple as *Trimper*. Any issues with overbilling will be addressed when the hours worked are examined. Finally, Defendant argues that *Johnson* factors eight and ten point toward a lower fee, as Plaintiff only obtained nominal damages and there is no indication that this case was undesirable within the local legal community. Plaintiff's lawsuit achieved more than just a nominal damages award; it

26

clarified the status of the Downtown Silver Spring sidewalks. Plaintiff also represents that he was unable to find any local attorney to take this case. Ultimately, Mr. Garza will be awarded a rate of $390/hour and Mr. Kellum a rate of $410/hour. Mr. Kellum's rate is being reduced to the rate he represented to the County in March 2014. Based on this email, Mr. Kellum's claim that $450 was his internal rate for both 2013 and 2014 is dubious. Mr. Kellum should not use his victory in this case as an opportunity to extract more from the County than he would otherwise charge, especially in a situation like this, where Plaintiff's case is squarely within Mr. Kellum's bailiwick.

**B. Hours Worked**

The fee applicant must also establish the reasonable expenditure of time in pursuing the case. This stage of the lodestar calculation requires the court to "exclude from [its] initial fee calculation hours that were not 'reasonably expended.' S.Rep. No. 94-1011, p. 6 (1976)." *Hensley*, 461 U.S. at 434.

In terms of the hours worked, Plaintiff's attorneys provide itemized time records that list the date of the work, who performed the work, the time spent, and a brief description of the work performed. (*See* ECF Nos. 36-2 and 36-4). Mr. Kellum - the attorney who performed the bulk of the work - divides his

27

time record into five stages: Case Development, Pleadings, Discovery, Motions Practice, and Fee Petition Preparation. Defendant objects to the amount of work done at each stage.

### 1.  Case Development

Plaintiff seeks fees for 36.6 hours at this stage.  During this phase, Mr. Kellum met with Plaintiff, researched the issues, issued a demand letter to the County, spoke with Mr. Garza regarding the case status, reviewed an offer of judgment, and engaged in final settlement that led to the consent order.

Defendant first objects to the vagueness of many of Plaintiff's time entries, such as "5/22/2012: Analyze Case for Litigation [2 Hours]. . . 5/23/12 "Review material to analyze case [1.10 Hours]."  An examination of the billing record reveals that the level of description of each entry is adequate. A greater demand for detail would unreasonably burden private attorneys who already live in a system that requires them to account for each six-minute increment of their working time. The County also contends that Mr. Kellum's entries make little chronological sense, pointing to a 0.30 hours entry for preparing the complaint on August 9, 2012, and then nothing until October 15, 2012 when he spent 7.20 hours preparing the complaint.  Defendant's argument is not apparent, as an independent evaluation of the time sheet does not reveal any

chronological inconsistencies.  In regard to time spent on case development, Mr. Kellum's hours appear reasonable and will be credited.

### 2.   Pleadings and Motions Practice

Mr. Kellum spent 38.7 hours preparing and revising the original complaint, reviewing the local rules, preparing the summonses, and researching and preparing the amended complaint. He spent 124.70 hours on motions practice, including time spent preparing the motion for preliminary injunction and the reply, and preparing oppositions to the two motions to dismiss. Defendant contends that there was simply no need to file any complaint and motion for injunctive relief, as once the County reviewed Plaintiff's April 2012 demand letter, it notified Plaintiff that it had revoked his trespass notice.  Defendant represents that even once the lawsuit was filed, the County worked quickly to resolve the matter by sending another letter making it abundantly clear that the trespass notice had been vacated and Plaintiff could return to Downtown Silver Spring. Nevertheless, Plaintiff pressed on.  Consequently, Defendant argues there was no need for the action to proceed after the second letter was sent on March 23, 2013.  The County was not as solicitous to Plaintiff's view of the matter as it represents

here.   Continuing  with  the  litigation  was  not  a  worthless
tactic,  although  some  of  the  hours  spent  were  unnecessary.

Defendant  also  argues  that  the  number  of  hours  is
unreasonable  and  excessive.   Mr. Kellum  represents  himself  as  an
experienced  First  Amendment  lawyer.   Consequently,  there  is  no
need  to  spend  so  much  time  on  pleading  a  relatively
straightforward  case  and  arguing  straightforward  aspects  of
First  Amendment  law.   In  support,  Defendant  attaches  a  copy  of
the  complaint  filed  by  Mr.  Kellum  in  *Deferio  v.  Bd.  of  Trs.  of
the  State  Univ.  of  N.Y.*  (N.D.N.Y.  2014),  to  demonstrate  the
similarities  between  that  pleading  and  the  one  in  this  case  as
evidence  that  Mr.  Kellum  is  operating  from  a  template  and,
therefore,  it  should  not  take  nearly  so  long  to  create  a
complaint  as  he  alleges.

The  County's  argument  has  some  merit.   The  basic  tenets  of
First  Amendment  law  are  settled  and  the  effort  needed  to  create
the  scaffolding  of  a  complaint  and  corresponding  arguments
challenging  a  government  policy  is  fairly  straightforward  and
repeatable,  especially  for  an  experienced  litigator  such  as  Mr.
Kellum.   As  Mr.  Kellum  points  out,  however,  oftentimes  the
success  of  a  First  Amendment  case  rises  or  falls  on  the  details,
such  as  this  case,  which  turned  on  the  status  of  the  sidewalk,
the  County's  relationship  with  the  private  entity,  and  what

exactly was said to Plaintiff when he was asked to vacate.   In

that respect, each case is unique.   Nevertheless, 124.70 hours

spent on the four motions (motion for preliminary injunction,

the reply, and the oppositions to the two motions to dismiss)

are excessive, especially given that nearly half of the motion

for preliminary injunction was spent on the background, which

largely replicated the complaint.   In a similar situation,

another district judge adjusted the lodestar downward for time

spent on an unsuccessful motion for preliminary injunction.   *Lux*

*v. Judd*, 868 F.Supp.2d 519, 533-34 (E.D.Va. 2012).   Here,

perhaps filing the motion for preliminary injunction was

appropriate.   Continuing to seek one after the March 23, 2013

letter and response by the County was not.   Furthermore, the

oppositions to the motions to dismiss are not particularly

thorough and largely replicate the arguments made in the

preliminary injunction briefings.   Mr. Kellum will be awarded

75.0 hours.   Similarly, time spent preparing the complaint will

be reduced to 25.0 hours, or approximately three full days to

create the original complaint, and an extra hour to prepare the

amended complaint, which consisted of obtaining the correct name

of the officers.[6]

---

[6]   Mr. Kellum seeks 0.30 hours for discovery, which is
encompassed in one entry on March 5, 2014 entitled "Review local

### 3.   Drafting of Fee Petition

Finally, Mr. Kellum requests 30.2 hours spent researching and preparing the fee petition and an additional 29.0 hours creating the reply to Defendant's opposition.  Defendant contends that Plaintiff is incurring excessive hours, pointing to the fee petition Mr. Kellum filed in *Deferio* as evidence that he recycles much of the same language and arguments in his numerous fee petitions in First Amendment cases.  Defendant did not seek to file a surreply challenging Mr. Kellum's request regarding hours incurred preparing the reply.

Defendant's objections are persuasive.  While there were some legal issues presented that needed to be addressed in both the original petition and the reply, such as whether Plaintiff was the prevailing party and whether an award of only nominal damages is deserving of any fees, much of the argument was similar to arguments made in any sort of fee petition and should be very familiar to an experienced fee petition filer such as Mr. Kellum.  Accordingly, the 59.2 hours Mr. Kellum is seeking will be reduced by half to 29.6 hours.

---

rule re: discovery."  The County does not take issue with this category and it will be granted in full.

### 4.   Mr. Garza's Hours Worked

Mr. Garza represents that he worked 5.7 hours, spent reviewing the initial documents and drafts prepared by Mr. Kellum.  The hours worked appear to be reasonable and will be awarded in full.

### 5.   Total Hours Worked

In sum, Mr. Kellum is credited with 166.5 hours and Mr. Garza is credited with 5.7 hours.  At their respective billing rates, this leads to an initial lodestar figure of $70,488.

### C.   Additional *Johnson* Factors

Many of the *Johnson* factors were subsumed in the rate and hour analysis and it is not necessary to consider them again. *See McAfee*, 738 F.3d at 89 ("to the extent that any of [the *Johnson* factors] has already been incorporated into the lodestar analysis, we do not consider [those factors] a second time." (*quoting E. Associated Coal Corp. v. Dir., OWCP*, 724 F.3d 561, 570 (4th Cir. 2013) (alteration in original)).  The other factors point toward adjusting the lodestar downward.

This First Amendment case was fairly straightforward. While Plaintiff's attorneys represent that accepting this case precluded them from taking other cases, that is true any time a lawyer accepts a case.  Mr. Kellum did not demonstrate how accepting this case precluded him from accepting a particularly

profitable case.    Plaintiff was the prevailing party and
received nominal damages and a declaration, but did not obtain
an injunction or any relief against the individual officers.
This case is not as time-consuming as Mr. Kellum represents.
Finally, as Defendant points out, the "similar" cases Plaintiff
points to in justifying his fee involved cases that were either
much more intensive or involved much more efficient billing.    In
sum, the additional *Johnson* factors counsel is favor of a
lodestar reduction of five (5) percent, bringing the figure to
$66,963.60.[7]

### D.   **Hours Spent on Unsuccessful Claims**

"After determining that the hours expended and the
attendant rates requested by a lawyer for a prevailing party are

---

[7] Defendant also asks the court to consider Plaintiff's
unwillingness to entertain settlement negotiations, pointing to
an offer of judgment for $10,000 to resolve all claims
(including attorneys' fees) sent to Plaintiff a month and a half
after the complaint was filed.    (ECF No. 37-5).    Plaintiff
rejected this offer, but his counteroffer provided no amount for
attorneys' fees, stating instead that he "will gladly provide
updated fees and expenses."    (ECF No. 37-6).    Following the
denial of the County's summary judgment motion, the parties
again attempted to reach a settlement on the fee issue, but the
County contends that Plaintiff was again unreasonable, offering
to take only a ten percent reduction on their fees, requesting a
total of $76,585.04.    (ECF No. 37-7).    "[A] district court 'has
discretion to consider settlement negotiations in determining
the reasonableness of fees but it is not required to do so.'"
*McAfee*, 738 F.3d at 90 (*quoting Thomas v. Nat'l Football League
Players Ass'n*, 273 F.3d 1124, 1130 n.9 (D.C.Cir. 2001)).    The
nature of the parties' settlement negotiations will not be
considered in determining a reasonable fee.

reasonable, a court is obliged to subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." *McAfee*, 738 F.3d at 91 (quotation marks and citation omitted). A claim is unrelated if it is "distinct in all respects from his successful claims. . . . Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440. A claim is distinctly different if it is "based on different facts and legal theories." *Id.* at 434.

Plaintiff brought two counts: violation of the First Amendment; and violation of the Due Process Clause. Plaintiff argues that all hours requested are related to a common legal theory and set of facts, including the unsuccessful preliminary injunction motion. All of Plaintiff's claims were related to one common legal argument, namely that the "County's actions in banning Corral from engaging in protected expression on [a] public sidewalk violate[d] his First Amendment rights." (ECF No. 36, at 11). All of his claims arose out of the same set of facts: the relationship between the County and the private property owner and the events of March 23, 2012. Defendant contends that Plaintiff's common set of facts is too vague and general and, furthermore, he has not separated out the time

35

spent on each claim (First Amendment versus Due Process, with each applied to every Defendant).

Plaintiff's arguments are convincing.  The two claims arise out of the same set of facts and legal theories.  It is unrealistic (and possibly impossible) to separate what time was spent on the Due Process claim as opposed to the First Amendment claim.

### E.    Relationship Between Success and Amount of Fee Award

> In the final step before making an attorney's fee award under [Section] 1988, a district court must "consider the relationship between the extent of success and the amount of the fee award."  The court will reduce the award if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole.". . .  What the court must ask is whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."

*McAfee*, 738 F.3d at 92 (*quoting Hensley*, 461 U.S. at 439-40, 434) (alteration in original).  "When considering the extent of the relief obtained, we must compare the amount of the damages sought to the amount awarded."  *Mercer*, 401 F.3d at 204.  "If a [Section] 1983 plaintiff achieves only part of the success she sought, the lodestar amount may be excessive."  *McAfee*, 738 F.3d at 93 (*citing Farrar*, 506 U.S. at 114).  As examples of plaintiffs who suffered a great discrepancy between damages

sought and damages awarded, the Fourth Circuit in *McAfee* pointed to its plaintiff, who sought $500,000 in compensatory damages and punitive damages, but was only awarded $2,943.60, and the *Farrar* plaintiff, who sought $17 million in compensatory damages, but was awarded only one dollar.

Plaintiff contends the "[h]e secured all the practical results he prayed for in his complaint: freedom to express his religious views on [the] public sidewalk in [D]owntown Silver Spring without fear of arrest, a judicial declaration confirming the violation of Corral's constitutional rights, and an award of nominal damages vindicating those important rights." (ECF No. 36, at 12). The County, by contrast, contends that it had corrected whatever deficiencies existed in its treatment of Downtown Silver Spring *before* this lawsuit was filed, meaning that Plaintiff had no success in this regard.

As is often the case, the truth is somewhere in the middle. Plaintiff, in arguing that he achieved 100 percent success, fails to note that he sought both a preliminary and a permanent injunction against the County's allegedly unconstitutional policies, but instead only secured the County's admission that Plaintiff's First Amendment rights were violated. That is only step one of attaching liability to a municipality under Section 1983. Step two is to demonstrate that the injury was inflicted

pursuant to the municipality's official policy or custom.    The County never admitted to any such policy.    Furthermore, Plaintiff did not obtain his desired preliminary injunction as there was no evidence that his rights were at risk of being violated in the future, and the relief he did receive was from the County only, as he dismissed his claims against the officers following the entry of the consent order.

On the other hand, as discussed above, the County's position on the status of speakers such as Plaintiff in Downtown Silver Spring evolved in favor of First Amendment rights as this dispute went from outside to inside the courthouse.    This success is worthy of some commendation.  *See Mercer*, 401 F.3d at 209 (plaintiff received only nominal damages, but was deserving of attorneys' fees where the effect of the decisions reached well beyond plaintiff herself); *Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1335 (4th Cir. 1996) ("In appropriate cases, . . . courts should consider the reasons why injunctive relief was or was not granted, or the extent and nature of any declaratory relief.   Moreover, *Farrar*'s concern was not only with whether the extent of recovery accords with the amount of attorney's fees.   The decision suggested a more general proportionality consideration as well: whether the public purposes served by resolving the dispute justifies the recovery

of fees."). Balancing the relief sought against the relief ultimately obtained, a further one-third reduction is reasonable. Plaintiff will be awarded $44,642.40 in attorneys' fees.[8]

### F.   Costs

Plaintiff also seeks $2,636.43 for litigation costs, including the pro hac vice admission fee, shipping costs, and $2,500 to secure a fee affiant for his fee petition.[9] A prevailing party is entitled to reasonable litigation expenses under Section 1988. *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986). Costs that may be charged include "those reasonable out-

---

[8] Similarly, the County asked that the court deny or reduce the fees because Plaintiff failed to adhere to Guideline 1.c. of Appendix B to the Local Rules, which requires "[c]ounsel for a party intending to seek fees if the party prevails [to] submit to opposing counsel quarterly statements showing the amount of time spent on the case and the total value of that time." Plaintiff never advised Defendant what his attorneys' fees were until March 14, 2014, over a year into the litigation. As Plaintiff points out, footnote three to the guideline quoted above provides that "[o]pposing counsel may not seek a denial or reduction of fees from the court if he/she did not first request that such statements be provided." A scheduling order that would have set deadlines for such statements was never issued due to the County having filed a motion to dismiss as opposed to an answer, and the County never requested a quarterly statement until March 2014, which Plaintiff complied with. Defendant's request will be denied. *See Berkley Trace, LLC v. Food Lion, LLC*, No. RDB-11-03207, 2013 WL 5718867, at *11 (D.Md. Oct. 18, 2013) (denying request to reduce fees when opposing party never requested quarterly statements).

[9] These expenses are in addition to those taxed by the clerk as costs. (ECF Nos. 35 and 39).

of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Defendant only takes issue with the costs sought in securing a fee affiant.  Plaintiff's remaining costs ($136.43) are reasonable and will be awarded in full.

Mr. Vincent charged $2,500 for his time and Plaintiff seeks to recoup these costs.  Plaintiff cites to *American Atheists, Inc. v. City of Starke*, 509 F.Supp.2d 1221, 1229 (M.D.Fla. 2007), where the court awarded costs incurred in utilizing an attorney "to cull through the attorney billing records and offer an opinion as to the validity of the number of hours worked and the rates charged."  Many courts have held otherwise, however, relying on the fact that the terms of Section 1988 do not permit compensation for expert witness fees.  As explained in *Agster v. Maricopa Cnty.*, 486 F.Supp.2d 1005, 1019 (D.Ariz. 2007):

> In *West Virginia Univ. Hosp. Inc. v. Casey*, 499 U.S. 83, 102 (1991), the Supreme Court concluded that 42 U.S.C. § 1988 conveys no authority to shift expert fees in civil rights cases to the losing party. Prevailing parties therefore cannot recover more than the witness fee provided in 28 U.S.C. §§ 1920 and 1821 for testifying experts and can recover nothing for services rendered by experts in a non-testimonial capacity. *Gates* [*v. Deukmejian*] 987 F.2d [1392,] 1407 [(9th Cir. 1992)].

40

> After *Casey*, Congress amended [Section] 1988
> to specifically provide for the recovery of
> expert fees in cases brought to enforce a
> provision of 42 U.S.C. § 1981 or 1981a.   42
> U.S.C. § 1988(c); *Padro v. Commonwealth of
> Puerto Rico*, 100 F.Supp.2d 99, 109 (D.Puerto
> Rico 2000).     Congress could have amended
> [Section] 1988 to allow for expert fees in
> all cases covered by § 1988(b), but did not.
> The *Casey* decision therefore stands with
> regard to [Section] 1983 cases.   *See Jenkins
> v. Missouri*, 158 F.3d 980, 983 (8th Cir.
> 1998).

Numerous other courts have reached the same conclusion.   *See, e.g.*, *Harvey v. Mohammed*, 951 F.Supp.2d 47, 73-74 (D.D.C. 2013); *Stormans Inc. v. Selecky*, 906 F.Supp.2d 1093, 1104 (W.D.Wash. 2012); *Borom v. Town of Merrillville*, 857 F.Supp.2d 785, 789 (N.D.Ind. 2012); *Drumgold v. Callahan*, 806 F.Supp.2d 428, 436 (D.Mass. 2011).

There is no indication that Mr. Vincent prepared the fee petition; instead, he provided his knowledge and experience as a local practitioner to bolster Plaintiff's requested hourly rates.   There is no statutory authority to provide for his fees in Section 1983 case.   Plaintiff will be awarded $136.43 in additional expenses.

## III. Conclusion

Plaintiff's motion for attorneys' fees and costs will be granted in part and denied in part.

Judgment will be entered in favor of Plaintiff and against Defendant in the total amount of $44,778.83.   A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
